1    wo

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Chara Watson-Nance, et al.,          )    No. CV-08-1129-PHX-ROS
                                          )
10             Plaintiffs,                 )    **ORDER**
                                          )
11   vs.                                   )
                                          )
12                                         )
     City of Phoenix, et al.,              )
13                                         )
               Defendants.                 )
14                                         )
                                          )
15   _____  )

16

17                             **Background**

18          On the morning of March 13, 2007, officers from the Phoenix Police Department

19   responded to a 911 call involving a domestic disturbance between Plaintiff Watson-Nance

20   and her mother Doris Watson.  After the officers arrived, an altercation ensued between

21   certain officers and Doris Watson that resulted in Ms. Watson's death (Docs. 1 Ex. A at 7-9;

22   5 at 4-6; 16 at 4-5).  On September 6, 2007, Plaintiffs filed a notice of claim with Defendants

23   concerning the events of March 13, 2007, claims which included wrongful death, intentional

24   and negligent infliction of emotional distress, false imprisonment and arrest, and various

25   constitutional torts under Title 42 U.S.C. § 1983 (Docs. 4 Ex. A at 5; 12 Ex. A at 5).  By

26   March 12, 2008 the claim was not settled and Plaintiffs filed a seven-count complaint in

27   Arizona state court, alleging all legal theories asserted in the notice of claim as well as an

28   additional cause of action under the Arizona Adult Protective Services Act (Doc. 1 Ex. A).

1   On June 17, 2008, Defendants filed a notice of removal to this Court (Doc. 1) and on June

2   23, 2008 filed a Motion To Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6),

3   regarding Plaintiffs' state law claims (Docs. 4, 18).   On June 23, and July 25, 2008

4   Defendants answered the Complaint (Docs. 5, 16).  For the following reasons, Defendants'

5   motion will be granted in part and denied in part.

6

7                                    **Discussion**

8   **A. Standard**

9        Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits a defendant to

10  challenge a complaint for "failure to state a claim upon which relief can be granted."  When

11  adjudicating the sufficiency of a claim, a court's inquiry "is limited to the allegations in the

12  complaint, which are accepted as true and construed in the light most favorable to the

13  plaintiff." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).  The defendant

14  bears the burden of proving failure to state a claim.  See e.g. Hedges v. U.S., 404 F.3d 744,

15  750 (3d Cir. 2005); Bangura v. Hansen, 434 F.3d 487, 498 (6th Cir. 2006); James Wm.

16  Moore, 2 Moore's Federal Practice § 12.34[1][a] at 12-73. (2008 ed.).

17
    **B. Motion To Dismiss**
18
    **1. Failure To Submit a Proper Notice of Claim**
19
         Defendants first argue Plaintiffs' state law claims are barred because Plaintiffs' notice
20
    of claim is deficient for failing to provide: (a) a specific amount for which the claim could
21
    be settled, (b) a factual basis supporting the proposed settlement figure, and (c) any reference
22
    to Count VII of the Complaint (Doc. 4 at 6-11).[1]  All Plaintiffs' causes of action survive the
23
    motion to dismiss except the claim for negligent infliction of emotional distress.
24

25

26

27       [1]Plaintiffs' state law claims are wrongful death, negligent and intentional infliction of
    emotional distress, false imprisonment and arrest, and violation of the Arizona Adult
28  Protective Services Act.

- 2 -

1  **a. Failure to Provide Specific Settlement Amount**

2  Arizona's notice of claim statute requires all "[p]ersons who have claims against a

3  public entity or a public employee shall file claims with the . . . public entity or public

4  employee as set forth in the Arizona rules of civil procedure within one hundred eighty days

5  after the cause of action accrues." A.R.S. § 12-821.01(A).  The statute further requires that

6  the "claim shall contain facts sufficient to permit the public entity or public employee to

7  understand the basis upon which liability is claimed" and "shall also contain a specific

8  amount for which the claim can be settled and the facts supporting that amount." Id.  "Any

9  claim which is not filed within one hundred eighty days after the cause of action accrues is

10  barred and no action may be maintained thereon." Id.

11  According to Defendants, Plaintiffs' notice of claim was deficient because it did not

12  "contain a specific amount for which the claim can be settled." Id.  Defendants concede that

13  the notice offered to settle all of Plaintiffs' claims for $5.5 million (Doc. 4 at 6).  However,

14  Defendants argue the $5.5 million figure does not satisfy the statute because it fails to link

15  monetary values to specific harms suffered by each Plaintiff and specific torts committed by

16  each Defendant (Doc. 4 at 6-7).  Defendants cite no controlling authority to support this

17  argument but rather rely on interpretations of the legislative purpose of § 12-821.01 and

18  analogies drawn between § 12-821.01 and Federal Rule of Civil Procedure 68 ("Rule 68").

19  These arguments fail.

20  Nowhere in the text does § 12-821.01 require plaintiffs to "segregate their demand"

21  by injury and tortfeasor as Defendants' motion argues (Doc. 4 at 6).  Moreover, the Arizona

22  Court of Appeals, Division One, has squarely rejected the proposition that "the claim statute

23  contains an implicit, unwritten requirement that claimants itemize their damages" Yollin v.

24  City of Glendale, 191 P.3d 1040, 1050 (Ariz. Ct. App. 2008).  To the contrary, the Arizona

25  Court specifically held "the statute does not require the notice to provide a specific

26  calculation of each element of damage *but only a total amount*." Id. (emphasis added).  An

27  Arizona Court of Appeals decision also rejected Defendants' Rule 68 analogy.  See

28  Havasupai Tribe of Havasupai Reservation v. Ariz. Bd. of Regents, 544 Ariz. Adv. Rep. 10,

1   2008 WL 5047641, *17 (Ariz. Ct. App. 2008) ("Because section 12-821.01's purposes are

2   unrelated to those of Rule 68, we decline to extend Rule 68's more stringent requirements

3   to notices of claim filed pursuant to section 12- 821.01."). While Defendants' policy and

4   legislative intent argument may eventually be determined to be correct, it is best saved for

5   adjudication before Arizona state courts, as it is not the province of this Court to divine the

6   intent of the Arizona legislature or establish what Arizona legal policy is when clear case

7   authority is available.

8

9   **b. Failure to Support the Settlement Amount With Sufficient Facts**

10

11          Defendants next argue Plaintiffs' state law claims are barred because the notice of

12   claim failed to establish a factual foundation to support the requested $5.5 million settlement

13   (Doc. 4 at 8). See A.R.S. § 12-821.01(A) ("The claim shall also contain a specific amount

14   for which the claim can be settled *and the facts supporting that amount*.") (emphasis added).

15   The question is whether Plaintiffs' notice of claim makes the required minimal factual

16   showing, that is "some facts . . . 'regardless of how meager,'" to support the requested

17   settlement for Plaintiffs' wrongful death, intentional and negligent infliction of emotional

18   distress, and false arrest and imprisonment claims. Vasquez v. State, 2008 WL 4402922,

19   *5 (Ariz. Ct. App. 2008) (citing  Backus v. State, 534 Ariz. Adv. Rep. 26, 2008 WL

20   2764601, *4 (Ariz. Ct. App. 2008)); accord Castaneda v. City of Williams, 2007 WL

21   1713328, *4 (D. Ariz. 2007).

22          When determining the factual sufficiency of a notice of claim, the Court must examine

23   the document in its entirety, considering the period of time (one hundred eighty days) in

24   which claimants must file the notice. See Jones v. Cochise County, 187 P.3d 97, 100,

25   103 (Ariz. Ct. App. 2008); A.R.S. § 12-821.01(A). The level of factual detail required is

26   dependent upon the claim asserted. See Backus, 2008 WL 2764601 at 5 ("Each claim is

27   different. Accordingly, a 'one size fits all' approach to compliance with the statute may be

28   problematic."); Havasupai Tribe of Havasupai Reservation, 2008 WL 5047641 at 11

1    ("[D]epending on the claim, the 'facts supporting' a demand may consist of a greater or

2    fewer number of facts about the acts that allegedly gave rise to liability and facts describing

3    the damages allegedly incurred.").  When determining how much factual detail is required

4    to support a particular claim, Arizona courts have set different standards for claims involving

5    general damages than for those involving special damages:

6         For example, in such a personal injury claim with special damages, the State might
          argue it is entirely appropriate to expect the claimant to specifically identify the nature
7         and cost of past medical care and anticipated cost of any future medical care required.
          It might, in the abstract, be equally reasonable to expect the claimant to describe the
8         amount of work time lost and approximate dollar value relative to such lost income
          claim and, to the extent practicable, outline the nature and extent of any future lost
9         earning capacity anticipated as a result of the injury. . . .   General damages in a
          negligence case are different than quantifiable special damages. These damages relate
10        to things that cannot be objectively measured with certainty, such as pain, suffering
          (physical and emotional), the diminution or loss of the ability to engage in
11        recreational and family activities, and, in general, how the injury adversely affects the
          claimant's ability to participate in and enjoy the daily activities of life. General
12        damages are, by nature, subjective and personal to the individual seeking them.

13        Backus, 2008 WL 2764601 at  5-6.[2]

14

15   i. Wrongful Death Claims

16

17   ───────────────

18        [2]Defendants argue for a uniform and demanding level of factual detail to be required of all
     notices of claims.  In support, Defendants cite six Arizona federal district court cases that dismissed
19   a plaintiff's state law claims for failing to lay a sufficient factual foundation in the notice of claim
     (Doc. 4 at 8-11).  However, these cases are not helpful to Defendants' argument.  They do not
20   address the question of uniformity and stand only for the basic principle, contrary to Defendants'
     argument, that a notice of claim must meet a *minimal* threshold of factual showing to satisfy  § 12-
21   821.01.  See e.g. Florian v. Perkinson,  2007 WL 1317263, *3 (D. Ariz. 2007) (barring state law
     claim because "the notice letter does not provide *any* facts supporting the claimed amount.");
22   Franklin v. City of Phoenix, 2007 WL 1463753, *3 (D. Ariz. 2007) (same outcome because
     plaintiff's claim "did not provide *any* facts supporting the claimed amounts") (internal citation
23   omitted); Campos v. City of Glendale, 2007 WL 3287586, *3 (D. Ariz. 2007) (same); Estrada v.
     City of San Luis, 2007 WL 4025215, *5 (D. Ariz. 2007) (same).  To the extent any of the cited cases
24   require a uniform heightened factual showing for a § 12-821.01 notice and contradict the decisions
     of Arizona courts, they have no persuasive value.  Compare e.g. Simmons v. Navajo County, 2008
25   WL 343292, *3 (D. Ariz. 2008) (rejecting a notice of claim by parents for death of son, in part, for
     failing to provide facts about "the value attached by Plaintiffs to their emotional distress or how that
26   value was determined."); Vasquez, 2008 WL 4402922 at 5 (upholding a notice of claim by parent
     for death of son alleging only "the facts that Vasquez is decedent's mother and that her son died
27   prematurely when he was only fifteen years old").

28

                                        - 5 -

1   Counts One and Two charge Defendants with wrongful death of Doris Watson under

2   state law theories of negligence and gross negligence (Doc. 1 Ex. A at 13-18).  Arizona

3   courts have held that notice for a wrongful death claim need only state the claimant "was a

4   surviving adult child and was seeking compensation for the death of her [parent]."  Backus,

5   2008 WL 2764601 at 7; accord Vasquez, 2008 WL 4402922 at 5 ("Although 'it may have

6   been optimal' for Vasquez to have provided some details about her relationship with her son

7   . . . the facts that Vasquez is decedent's mother and that her son died prematurely when he

8   was only fifteen years old were sufficient to support her claimed damages.") (citing Backus,

9   2008 WL 2764601 at 7).  Plaintiffs' notice of claim clearly meets this minimal threshold,

10   which is that Plaintiffs Watson-Nance and Shackelford are the surviving children of Doris

11   Watson and that they are seeking compensation for the premature death of their mother (Doc.

12   4 Ex. A at 1, 6).

13   ii. Intentional Infliction of Emotional Distress Claims

14

15   Count Six is for intentional infliction of emotional distress ("IIED").  As yet, Arizona

16   courts have not explicitly laid out the factual requirements necessary to support such a notice

17   of claim.  The Court will apply the principles articulated in Backus and related precedent in

18   determining if Plaintiffs supported the IIED claim with sufficient facts.

19   Damages for intentional infliction of emotional distress may be specific, such as the

20   cost of psychiatric treatment, or they may be general, such as mental anguish.  See Duke v.

21   Cochise County, 938 P.2d 84, 87 (Ariz. Ct. App. 1996) ("To recover for intentional infliction

22   of emotional distress, a plaintiff must show that the defendant's conduct was extreme and

23   outrageous, causing plaintiff severe emotional distress; *physical injury need not occur*.")

24   (emphasis added).  Plaintiffs' notice alleges general emotional distress damages caused by

25   Phoenix Police Officers' intentional behavior. For example, with respect to Plaintiff Watson-

26   Nance (Chara),  the notice states: "Chara went over to where the officers were *and to her*

27   *horror* saw that her elderly, infirm mother was now face down on the pavement, lying on her

28   stomach and being held down by the officers.  One officer had his knee in her Mom's neck

1   or shoulder area . . ." (Doc. 4 Ex. A at 3) (emphasis added).  The notice further states: "After

2   Doris was taken to the hospital, Chara was forced by members of the [Phoenix Police

3   Department], including Officer Buckner, to remain behind and be interviewed. . . Chara *was*

4   *horrified* at not being able to go with her Mom" (Doc. 4 Ex. A at 4-5) (emphasis added).  The

5   notice, with respect to both Plaintiffs Watson-Nance and Shackelford (Lia), additionally

6   states:

7       "While the girls stood by watching, officers came and went in the room, taking
        photographs and the like. Chara and Lia, *understandably distraught* at the sudden and
8       dramatic death of their otherwise healthy mother, were told that Doris's body was a
        'crime scene' that had to be processed before they could enter.  When they were
9       finally allowed in the room, they were told not to touch their mother.  Lia leaned in
        to kiss her Mom's forehead [and] was forcibly shoved away by an officer and ordered
10      to 'keep back' . . . they were never able to tell her good-bye; they never had a chance
        to say a prayer over her body" (Doc. 4 Ex. A. at 5) (emphasis added).
11

12   Because of these events, according to the notice, both Plaintiffs suffered "anguish" (Doc. 4

13   Ex. A at 6).

14       These IIED damages are "by nature, subjective and personal to the individual seeking

15   them" and not amenable to a detailed accounting Defendants argue is necessary, especially

16   not within the one hundred eighty days required by the statute.  Backus, 2008 WL 2764601

17   at 6; see also Jones, 187 P.3d at 103 ("The factual-basis requirement of § 12-821.01 must be

18   viewed in light of the inherent uncertainty in damages for pain and suffering . . . it must be

19   viewed in the context of the relatively compressed time period-180 days-within which the

20   notice of claim must be filed");  Havasupai Tribe of Havasupai Reservation, 2008 WL

21   5047641 at 12 ("We do not agree that a notice of claim alleging general damages fails under

22   A.R.S. § 12-821.01 if it does not describe physical manifestations of emotional distress

23   suffered by the claimant(s).").  Plaintiffs' factual statements gave Defendants sufficient notice

24   of Plaintiffs' claims, as required by the statute.  If Defendants needed more information, it

25   was their responsibility to request it.  See Backus, 2008 WL 2764601 at 6 ("To the extent the

26   governmental entity seeks additional information to evaluate the demand, it certainly can ask

27

28

1  for it . . . the courts should not place claimants in the situation of guessing about what

2  information the government might want in any given case.").

3  iii. Negligent Infliction of Emotional Distress Claims

4        Count Six alleges negligent infliction of emotional distress ("NIED").  Unlike in

5  claims for IIED, general damages are not available for NIED because proof of actual physical

6  injury is required.  See Duke, 938 P.2d at 87 ("[T]o recover for negligent infliction of

7  emotional distress, a plaintiff . . . must prove *physical injury* resulting from the shock of

8  witnessing injury to a closely related person.") (emphasis added).  Nowhere in the notice of

9  claim do Plaintiffs allege facts of physical injuries sustained by either Plaintiff resulting from

10  the described events.  Nor do Plaintiffs allege facts concerning costs incurred because of

11  physical injuries.  See Backus 2008 WL 2764601 at 5 (With respect to special damages, "it

12  is entirely appropriate to expect the claimant to specifically identify the nature and cost of

13  past medical care and anticipated cost of any future medical care required . . . to expect the

14  claimant to describe the amount of work time lost and approximate dollar value").  Without

15  "some facts . . . regardless of how meager" concerning the physical injuries Plaintiffs

16  suffered because of Defendants' alleged negligent infliction of emotional distress, Plaintiffs'

17  notice does not satisfy § 12-821.01.  Vasquez, 2008 WL 4402922 at 5 (internal citation

18  omitted).

19

20        Plaintiffs, citing Jones, argue Defendants' conduct "waived their right to assert that

21  the Notice of Claim was deficient" (Doc. 12 at 2).  See 187 P.3d at 104 ("The notice of claim

22  statute is subject to waiver, estoppel and equitable tolling.") (citing Pritchard v. State, 788

23  P.2d 1178, 1183 (Ariz. 1990)).  However, Jones is distinguishable.  Jones held "waiver [by

24  conduct] may be found when a governmental entity has taken substantial action to litigate

25  the merits of the claim that would not have been necessary had the entity promptly raised the

26  [notice of claim] defense."  Id. at 105 (finding waiver when the defendant had issued a

27  disclosure statement, answered interrogatories, participated in seven depositions, and then

28  raised the notice of claim defense, almost one year after the complaint was filed).  Here,

1    Defendants removed the action on June 17, 2008 and on June 23, 2008 raised the notice of

2    claim defense in a motion to dismiss (Docs. 1, 4).  Defendants' motion was timely and

3    Defendants did not engage in conduct, prior to filing of the motion, "inconsistent with an

4    intention to assert the notice of claim statute as a defense." Id.  Accordingly, the Court will

5    dismiss Plaintiffs' NIED claim.

6    iv. False Arrest and Imprisonment Claim

7

8        Like intentional infliction of emotional distress, claims for false arrest and false

9    imprisonment do not require special damages. See Boies v. Raynor, 361 P.2d 1, 3 (Ariz.

10   1961) ("With regard to damages for false arrest and imprisonment . . . mental suffering,

11   including fright, shame, and mortification from the indignity and disgrace, consequent upon

12   an illegal detention [are] usually considered [] injur[ies] for which compensation [m]ay be

13   made."); accord Gau v. Smitty's Super Valu, Inc., 901 P.2d 455, 457  (Ariz. Ct. App. 1995)

14   ("[A] false imprisonment claim does not require proof of physical injury to go forward.").

15   Thus, a detailed accounting of concrete injuries is not required in a corresponding notice of

16   claim.  See Backus, 2008 WL 2764601 at 6; Jones, 187 P.3d at 103; Havasupai Tribe of

17   Havasupai Reservation, 2008 WL 5047641 at 12. Judged by this standard, Plaintiffs' notice

18   of claim contains sufficient facts to support the existence of general, emotional damages

19   related to false arrest and imprisonment:

20       "In the hallway, she was met by Det. Orona and Sgt. Clark who proceeded to
         interrogate her for three hours while her Mom lie dead just doors away.  Chara,
21       *distressed and distraught*, felt she had no choice but to remain with the police
         interrogators, answering their seemingly endless questions" (Doc. 4 Ex. A at 5)
22       (emphasis added).

23   For the same reasons as stated above concerning the IIED cause of action, Plaintiffs' notice

24   provided Defendants with sufficient facts to support the false arrest and imprisonment claims.

25

26   v. Doris Watson's Estate

27

28

1    Plaintiffs concede "the Estate is not a proper party to the state law claims" (Doc. 12

2 at 2).  Defendants' § 12-821.01 arguments concerning the Estate are moot.

3

4  **c. APSA Claim**

5    Defendants challenge Count Seven, the Arizona Adult Protective Services Act

6 (APSA) claim, on two grounds.  First, similar to the argument in Section B.1.b above,

7 Defendants contend Plaintiffs' notice of claim does not contain sufficient facts to support the

8 APSA cause of action, as required by § 12-821.01(A).  Second, Defendants contend

9 Plaintiffs' failure to specifically reference the APSA cause of action in the notice prohibits

10 raising it.

11    With respect to Defendants' second contention, a notice of claim "does not limit

12 Plaintiffs to the legal theories identified therein."  Castaneda, 2007 WL 1713328 at 4.  The

13 plain text of the statute is clear that § 12-821.01 requires a claimant to give a prospective

14 public entity defendant notice of facts underlying the claim; the statute is silent on the topic

15 of legal theories.  See ARS § 12-821.01(A) ("*The claim shall contain facts* sufficient to

16 permit the public entity or public employee to understand the basis upon which liability is

17 claimed.") (emphasis added).  Defendants cite two cases to support the position that the text

18 of § 12-821.01(A) says "facts" but means "facts and causes of action" – Haab v. County of

19 Maricopa, 191 P.3d 1025 (Ariz. Ct. App. 2008) and State v. Brooks, 534 P.2d 271 (Ariz. Ct.

20 App. 1975).  However, both cases are distinguishable.  In Haab, the Arizona Court of

21 Appeals barred a claim because the predicate notice failed to state sufficient facts, not

22 because it failed to outline  all potential legal theories.  See 191 P.3d at 1028-30. In Brooks,

23 the Court of Appeals barred a suit because the notice did not contain any cognizable claim,

24 as defined in ARS § 12-821. See 534 P.2d at 274-75. While the facts of Brooks are arguably

25 analogous to those of the present case, Brooks predates the 1994 passage of § 12-821.01 and

26 thus was not informed by the Arizona legislature's decision to make factual notice the central

27 element of compliance with the notice of claim statute.  Given the plain text of § 12-

28

1
2
3
4

821.01(A) and Defendants' failure to cite precedent to the contrary, the Court agrees with Plaintiffs that a notice of claim need not be a "prelude to substantive legal briefing" and thus need not allege all legal theories later incorporated into the complaint (Doc. 12 at 15) (citing Castaneda, 2007 WL 1713328 at 4).

5
6
7
8
9
10
11
12
13
14
15
16
17
18

With respect to Defendants' first contention, Plaintiffs' notice alleges sufficient facts to support the APSA claim, as required by § 12-821.01. The Arizona legislature enacted APSA, ARS §§ 46-451 *et seq.*, to provide "a statutory cause of action for incapacitated or vulnerable adults who are the victims of neglect, abuse or exploitation." In re Estate of Wyttenbach, 193 P.3d 814, 817 (Ariz. Ct. App. 2008). ARS § 46-455(A) creates liability for anyone "who is a de facto guardian or de facto conservator . . . to an incapacitated or vulnerable adult and who causes or permits the life of the adult to be endangered or that person's health to be injured or endangered by neglect." The statute further provides for the award "of actual and consequential damages, as well as costs of suit and reasonable attorney fees, to those persons injured by the conduct described in this section." ARS § 46-455(H)(4). According to the Arizona Supreme Court, "[t]he statute does not purport to prohibit a court from ordering damages to be paid to the representatives of the injured victims, whether or not the victim is deceased." Matter of Guardianship/ Conservatorship of Denton, 945 P.2d 1283, 1286-87 (Ariz. 1997).

19
20
21
22
23
24
25
26
27
28

Plaintiffs' notice includes sufficient facts to establish that Doris Watson was an incapacitated or vulnerable adult who was under the control of Defendants, that Defendants injured Ms. Watson's health (i.e. caused her death), and that Plaintiffs, as Ms. Watson's representatives, seek compensatory damages for Ms. Watson's loss of life. The question of whether Plaintiffs provided sufficient facts to support their claim to be compensated for Doris Watson's death under APSA is similar to the question of whether Plaintiffs provided sufficient facts to support their claim for compensation under the wrongful death cause of action, as both claims seek compensation for the value of Ms. Watson's life. Adopting the same analysis as in Section B.1.b.i regarding the wrongful death claim, the Court finds the

1   notice of claim for the APSA cause of action sufficient.  See Backus, 2008 WL 2764601 at

2   7 (notice for wrongful death claims under ARS § 12-821.01 need only provide that defendant

3   caused the decedent's premature death and that plaintiff seeking compensation for the death

4   is related to the decedent); Vasquez, 2008 WL 4402922 at 5 (same).  While the Court agrees

5   with Defendants that Plaintiffs' application of APSA to the facts of this case appears to be

6   a novel use of the statute, Defendants cite no authority suggesting the novelty of a cause of

7   action increases a plaintiff's notice requirements under § 12-821.01.

8

9   **2. Proper Party To Wrongful Death Claims**

10      Defendants argue Doris Watson's estate is not the proper party to the wrongful death

11  cause of action, since Arizona law only allows the decedent's estate to be a party if a

12  personal representative is not available.  See ARS § 12-612.  The issue is moot because

13  Plaintiffs concede the point (Doc. 12 at 15).

14

15  **3. Punitive Damages**

16      Plaintiffs, relying on APSA, seek punitive damages against all Defendants.

17  Defendants respond that punitive damages cannot be imposed on a public entity or a public

18  official acting within the scope of employment.

19

20      APSA permits the imposition of punitive damages provided the common law

21  otherwise allows such damages.  See ARS § 46-455(H)(4) ("The court or jury may order the

22  payment of punitive damages under common law principles that are generally applicable to

23  the award of punitive damages in other civil actions."); see also Denton, 945 P.2d at 1287

24  (despite some internally inconsistent language on the question of punitive damages found in

25  subsection 46-455(O), subsection (F)(4)[3] authorizes the imposition of  such damages).

26  Arizona common law does not authorize the award of punitive damages against the State or

27

28      [3]Subsection (F)(4) is now subsection (H)(4).

1   its civil subdivisions.  See State v. Sanchez, 579 P.2d 568, 570-73 (Ariz. Ct. App. 1978)

2   (although the common law allows public entities to be sued, it does not permit imposition of

3   punitive damages);[4] Welch v. McClure, 598 P.2d 980, 983 (Ariz. 1979) (adopting Sanchez).

4   Accordingly, Plaintiffs may not collect punitive damages from Defendant City of Phoenix

5   under APSA.[5]

6   **4. The Phoenix Police Department As a Jural Entity**

7

8   Defendants argue the Phoenix Police Department should be dismissed because it is

9   not a jural entity, cannot be sued, and thus is not a proper defendant in this action.  Federal

10  Rule of Civil procedure 17(b)(3) ("Rule 17 ") provides a party that is neither an individual

11  nor a corporation may only be sued if the law of the state where the court is located allows

12  the party to be sued.  The Rule further states an "unincorporated association with no such

13  capacity under that state's law may sue or be sued in its common name to enforce a

14  substantive right existing under the United States Constitution or laws."  Fed. R. Civ. P.

15  17(b)(3)(A).

16  The Court begins with Rule 17(b)(3)(A).  Although Plaintiffs seek to enforce various

17  substantive constitutional rights via 42 U.S.C. § 1983, Rule 17(b)(3)(A) is inapplicable to

18  governmental entities and does not subject the Phoenix Police Department to suit.  See e.g.

19  Dean v. Barber, 951 F.2d 1210, 1215 n.4 (11th Cir. 1992) ( a county sheriff's department was

20

21      [4]While the defendant/appellant in Sanchez was the State of Arizona, the Court of Appeals'
    analysis is applicable to both the State and its civil subdivisions.  See 579 P.2d at 570 n.2 ("For the
22  purpose of deciding this case, we shall treat the term 'municipal corporation' and the 'state' as being
    synonymous.").

23

24      [5]This prohibition extends to the named Phoenix police officer Defendants who, the
    Complaint alleges, were acting within the scope of their employment during the events before and
25  after Ms. Watson's death and through whom Plaintiffs are seeking to impose vicarious liability
    against the City (Doc. 1 Ex. A at 4).  See Patterson v. City of Phoenix, 436 P.2d 613, 617 (Ariz.
26  1968) ("[U]nder the doctrine of respondeat superior a municipality is liable for those acts of its
27  police officers within the scope of their employment.").

28

- 13 -

1   not a proper defendant in a § 1983 action because state law did not allow it to be sued and

2   Rule 17(b)(3)(A) is inapplicable to governmental entities).[6]

3   With respect to Rule 17(b)(3), Arizona law generally allows governmental agencies

4   or instrumentalities to sue or be sued only if such authority is granted in the agency's or

5   instrumentality's organic statute.  See e.g. Kimball v. Shofstall,  494 P.2d 1357, 1359 (Ariz.

6   Ct. App. 1972) (disallowing a suit against the State Board of Education because neither its

7   organic provisions in the Arizona Constitution nor those in the Arizona Revised Statutes

8   allowed it to sue or be sued); accord Lazarescu v. Ariz. State Univ., 230 F.R.D. 596, 601 (D.

9   Ariz. 2005) ("The effect of Arizona Revised Statutes §§ 15-1601 and 15-1625 is clear.

10  Arizona State University cannot be subject to suit because the Arizona Legislature has not

11  so provided.").

12  Defendant Phoenix Police Department is an instrumentality of the City of Phoenix,

13  created entirely by municipal law with organic provisions found in the Phoenix City Charter

14  and City Code.  See Phoenix, Ariz. Charter Ch. 3, § 3 ("Upon recommendation of the City

15  Manager[,] the Council by ordinance may create, change and abolish offices, departments

16  or agencies, boards and commissions"); Phoenix, Ariz. Code §  2-119(a) ("There shall be a

17  Police Department, headed by a Chief of Police. He shall be responsible for . . ."); Id. at §

18  2-119(c) (The Chief of Police "shall at all times be subject to the supervision and control of

19  the City Manager").  Thus, the Department may only sue and be sued if the Department's

20  organic statute makes such an allowance.  Nowhere in Chapter Two, Article IV of the

21  Phoenix City Code, the Police Department's organic statute, has the city counsel authorized

22  Defendant to sue or be sued.  Nor do Plaintiffs point to another provision of the City Code

23  or the Arizona Revised Statutes that would allow Defendant to sue or be sued.

24

25

26  [6]Moreover, it is not entirely clear a municipal police department  is a "person" within the
27  scope of § 1983.  See 42 U.S.C. § 1983 ("Every *person* who . . . shall be liable . . .") (emphasis
    added); see also e.g.  Petaway v. City of New Haven Police Dep't, 541 F. Supp.2d 504, 510-11 (D.
28  Conn. 2008) ("Nor is a municipal police department considered to be a 'person' within the meaning
    of section 1983").

1       Plaintiffs respond that the Phoenix Police Department is subject to suit because it is

2   a political subdivision, as contemplated by a three-factor test outlined in McClanahan v.

3   Cochise Coll., 540 P.2d 744, 747 (Ariz. Ct. App. 1975).  This argument is unpersuasive.

4   First, the McClanahan "test" is not a test, but rather a set of "attributes which are generally

5   regarded as distinctive of a political subdivision."[7]  Id.  When state courts have found a

6   governmental entity satisfies the McClanahan analysis, sometimes the entity is found to be

7   a political subdivision and sometimes it is not.  See e.g. State v. Escobar-Mendez, 986 P.2d

8   227, 231 (Ariz. Ct. App. 1999) (the Maricopa County Hospital is not a political subdivision,

9   despite arguably satisfying the McClanahan criteria); Flood Control Dist. of Maricopa

10  County v. Conlin, 712 P.2d 979, 983 (Ariz. Ct. App. 1985) (applying McClanahan to hold

11  county flood control districts are political subdivisions).  At least two Arizona federal district

12  court decisions have recognized the limited value of the McClanahan criteria in determining

13  whether an entity is a political subdivision.  See Gotbaum ex rel. Gotbaum v. City of

14  Phoenix, 2008 WL 4628675, *6 (D. Ariz. 2008) ("The [Phoenix] Police Department satisfies

15  each of [the McClanahan] criteria, but so do many offices within city government. Plaintiffs'

16  argument would suggest that many parts of the City's operation constitute separate political

17  subdivisions subject to suit. The Court cannot agree with so broad a proposition"); Wilson

18  v. Maricopa County, 2005 WL 3054051,*1 (D. Ariz. 2005) (refusing to find the Maricopa

19  County Sheriff's Office to be a political subdivision, despite satisfying the McClanahan

20  criteria).

21      Given the equivocal text and inconsistent progeny of McClanahan, the Court adopts

22  the more convincing analysis of Gotbaum and Wilson and finds the Phoenix Police

23

24

25

26      [7]Under McClanahan, a public entity may be a political subdivision if "it exists for the
    purpose of discharging some function of local government . . . it has a prescribed area, and . . . it
27  possesses authority for subordinate self-government by officers selected by it."  540 P.2d at 747.

28

1   Department is a municipal agency or an instrumentality, not a political subdivision.[8]  Thus,

2   the Phoenix Police Department is an unauthorized Defendant under federal and state law and

3   must be dismissed.

4

5   Accordingly,

6       **IT IS ORDERED** Defendants' Motion To Dismiss (Doc. 4) **IS GRANTED IN**

7   **PART AND DENIED IN PART**, in accordance with this opinion.

8

9       **FURTHER ORDERED** the Clerk of Court shall terminate Defendant Phoenix Police

10  Department.

11

12

13

14      DATED this 24th day of March, 2009.

15

16

17

18

19

20      _____
                    Roslyn O. Silver
21              United States District Judge

22

23

24

25  [8] Plaintiffs also argue the Phoenix Police Department is a jural entity because some state courts have allowed suit against it (Doc. 12 at 16).  See e.g. Church of Scientology v. City of Phoenix Police Dep't, 594 P.2d 1034 (Ariz. Ct. App. 1979); Media Am. Corp. v. Phoenix Police Dep't., 1993 WL 540485 (Ariz. Super. Ct. 1993); Hill v. City of Phoenix Police Dep't, 975 P.2d 700 (Ariz. 1999); Mulleneaux v. State, 950 P.2d 1156 (Ariz. Ct. App. 1997).  However the cited decisions do not examine the question of whether the Department is a jural entity and thus offer no precedential value when resolving this question.